And we'll hear argument next in Grand River Enterprises Six Nation v. Sullivan 20-1044. Thank you, Your Honor. May I proceed? Mr. Sandler, yes. Thank you. I may have pleased the court, Eric Sandler for the appellant, Grand River Enterprises. Connecticut's nationwide reconciliation requirement for non-participating manufacturers requires Grand River, as a condition to having its products sold in Connecticut, to trace and document all sales of its products in the United States by third-party importers and other downstream entities in the chain of distribution. Because Grand River's complaint alleges enough facts that this requirement violates three constitutional provisions, we ask the court to reverse the district court's dismissal of Grand River's complaint. The reconciliation requirement violates due process because it is an arbitrary test that fails to provide any information that furthers the state's interest with respect to in-state sales of Grand River products. It is also unconstitutional because of its extraterritorial effect under the Commerce Clause. The requirement has very real practical effects with respect to sales of Grand River products throughout the country. And I'll address why in a moment. And then lastly, the requirement violates the Supremacy Clause because it conflicts with federal statutes and relies on confidential records that the state is not entitled to under federal law. Now, first with respect to Grand River's substantive due process claim, the test under the reconciliation requirement is irrational and arbitrary and fails to provide anything of value to the state of Connecticut, we think for three reasons, primarily. First, the state chooses two figures for which there will be an inevitable discrepancy. On the one hand, importers, federal excise tax payments, and on the other hand, the interstate and interstate sale of manufactured products. The state in its brief acknowledges that there are innumerable legitimate reasons why these two figures may not correlate as closely as the statute requires. That's at pages 8, 11, and 12 of the state's brief. The state acknowledges that there's a safety valve provision. So you can explain the difference. You can explain the difference beyond two and a half percent. Right. And in fact, at the outset of this dispute, Grand River provided the explanation as to why the two amounts would not correlate. And the response from the Department of Revenue Services was, you have to document and trace all of the sales nevertheless, in order for us to consider that explanation. So even if the commissioner ultimately may accept Grand River's explanation, it is the process of having to go through compliance that creates these constitutional problems. In order to collect the necessary records, Grand River, the third party importers, the downstream entity sellers of Grand River products across the country, must agree at the outset that the records will be turned over to Grand River and then ultimately turned over to the Department of Revenue Services in order to comply with this requirement. Counselor, I have a question just, and maybe you can help me on this. In coming up with the excise tax figures, is this based on the federal excise tax? The figures that your client's been asked to assemble? The whole purpose of this exercise, at least on the other side's argument, is to generate, is to improve their ability to collect state excise taxes. I guess that's, is that what we're talking about here? Because excise tax is thrown around in the briefs, and I just think there's a difference between state and federal. The requirement, and this is specified in the reconciliation requirement statute, is to look at the excise taxes paid by the importer of Grand River's products. And as a reminder, Grand River is based in Canada. It only does business with US importers, which then, you know, resell products down the chain of distribution. So it is the federal excise tax statute that is looked at for the comparison on one side, and then the state requires all documentation and records of Grand River sales throughout the country to see if there is a discrepancy between the two That discrepancy is going to be inevitable because the interstate sales will not match up with the amount of product inputted. That doesn't mean, that doesn't necessarily mean, what you're describing is the difficulty of reconciliation, right? And maybe almost the impossibility of perfect reconciliation. I understand that, but that doesn't mean from the, in the context of substance of due process and rational basis review, that the statute is not rationally related to, you know, the means and what they're trying to do. Well, it is irrational for three reasons. One, it's comparing two data sets that aren't intended under any federal provision to recognize. No, but counsel, I understand that argument, but also as Judge Lay pointed out, there's this reconciliation aspect of it. That doesn't end the inquiry, just the comparison of those data. Then they want to talk to you and try and reconcile, see what's the difference. And then if they get the intrastate information, then they have a better idea of whether their cigarettes are creeping into the black market. Yeah. And that's the second reason we point to as to why it's irrational. The requirement is not limited to the intrastate records, which Grand River would provide. If they ask for your intrastate records, in addition to that, then you would say, maybe it'd be more rational. Well, they're doing that, but informally. Right. They're doing it as part of the reconciliation after the gross numbers are obtained. Yeah. And to illustrate with an example, the state requires, if you take a Florida based importer that imports Grand River cigarettes into Florida and then sells them in Florida or perhaps some neighboring Southeastern states, Connecticut is requiring Grand River to provide all of the records for those transactions. There's no rational basis to conclude that any of those records or any of the state's interest in ensuring that there are no illicit sales in the state of Connecticut and the state's interest in collecting all taxes and excise payments in the state of Connecticut. That extra territorial effect does not, you know, not only affects our substantive due process claim, but it raises commerce clause concerns. As this court has stated in, you know, the Vizio versus Klee case and other cases, a state statute that has the practical effect of extra territorial control on out-of-state transactions. How does it control the out-of-state transactions? Just collecting the data. I don't, that part I don't understand. Well, because Grand River is dealing with third party importers and other third parties down the chain of distribution, which file these records, maintain these to turn over these records in connection with their sales transactions. They must be turned over to Grand River and then ultimately to the Connecticut Department of Revenue Services. So to put yourself in the position of one of those entities and to illustrate the practical effect of this statute, you know, if they are considering trading in Grand River cigarettes anywhere in the country, they must ask themselves, am I going to turn over my sales reports, my confidential inventory reports, and I want to turn those over to Grand River and then ultimately to Connecticut in order to do a transaction involved in Grand River products in Florida or Missouri. How do you have standing to make that argument on behalf of the other states of the burden borne by the other states? I can see the other states coming in and saying, making that argument, but how do you have standing for that? Because there's no harm to you. You pointed out harm to the other states. So where's the standing? Where's the addressability? Where's the traceability? There is harm and injury, in fact, to Grand River because Grand River has to structure its sales, its distribution chain in order to comply with this Connecticut requirement. It must do that across the country. It is Grand River's responsibility under the Connecticut statute to collect all of these records from all of these third parties and then to turn that over to the state. The object of the statute is Grand River and other non-participating manufacturers. Does the statute and this reconciliation scheme and what you allege is the burden on the importers with which Grand River works in the U.S., does that prevent Grand River from doing business in any other state besides Connecticut? No, it would not. Why, as a matter of the Dormant Commerce Clause, is that not effectively the end of the story? Well, it's not that it would prevent Grand River from doing business in other states. It's that the business that takes place in those other states, which are entirely extraterritorial to Connecticut, must be structured in a way that in order to comply with the Connecticut statute. So to take, if I may, and I see I'm over my time, Your Honor, for just another minute, address the Vizio case, which was prominent in the district court decision and in the state's arguments. There's two key points in Vizio where facts were lacking, but here Grand River pleads those facts. The Vizio decision points out that Vizio is free to arrange its business in one manner or another without consideration of out-of-state compliance with Connecticut's e-waste law. It also goes on to say that Vizio had not alleged that Connecticut reaches out and directs Vizio's decision-making apparatus without any other interstate commercial participant. So the statute does not direct you to do anything with respect to other states that may have very different tax schemes related to the sale of cigarettes or, you know, no scheme. It says if you want to do business in Connecticut for us, this is what we're going to need from people, from businesses, cigarette manufacturers who are not part of the pact deal. Well, the Connecticut statute can't be complied with without structuring the third parties turn over their confidential records to Grand River. I have a question on that point, Mr. Sandler. At this point, the importers that were the customers, Grand River, all did cooperate. Am I correct? So far, and so far, Grand River has not been delisted from the directory. I'm not arguing standing here. I understand your argument of injury, in fact, from having to comply with a regulation, you believe, of a regulatory action by a state that you believe violates three provisions of the Constitution. But I'm looking at it to say that this would be a very different case if it were impossible to comply, because if the customers had some reason, they didn't want to cooperate. But that is not, in fact, the case that you have here. In other words, on the 12B6 issue here, the dismissal for failure to state a claim, it looks to me like you are able to comply and have been able to comply so far. And of course, as Judge Loewe also mentioned, you do have the, with the reconciliation requirement, you do have the explanation. So can you shed some light on why it is still a constitutional violation, even though you've been able, your client has been able to do all these things? Yes, Judge Stanco, and I would give you three reasons for that. One, the fact that you are able to comply with an irrational and arbitrary test does not render the requirement rational or not arbitrary. Second, in order to comply with this statute, which you are correct, up until this point, Grand River has been able to do, there is a practical effect on the out-of-state activity and sales of Grand River products all over the country. But it's a reporting after the fact effect, correct? We disagree with that, Your Honor. As alleged in the complaint, this has a front-end impact on the sale of Grand River cigarettes anywhere in the country, because Grand River cannot do business with third parties that are not willing to accede to this Connecticut requirement by turning over their confidential records. So Grand River would be doing business at its peril if it were to just engage in plan to report what it can report to the state of Connecticut in the next reporting cycle. So it's just a potential that the customers would, in the future, refuse to cooperate. But to this point, as a factual matter, they all have.  There's no question, Your Honor, that if there's not cooperation and that leads to delisting of Grand River, that is the worst case scenario. And that threat does hang over this case. But our contention is that the complaint states sufficient facts to show that the mere process of compliance violates these constitutional provisions. So you've reserved some time for rebuttal. We'll hear from Ms. Wilson. Thank you, Your Honor. Thank you, Your Honors. May it please the Court, I am Assistant Attorney General Heather Wilson, representing the defendant, Apple Lee, the Connecticut Commissioner of Revenue Services. The district court's dismissal of GRE's second amended complaint should be affirmed because GRE has not and cannot allege any viable constitutional claim against the statute. The statute comports with the Commerce Clause. The statute utilizes nationwide sales and shipping data solely for the purpose of regulating tobacco sales within Connecticut. The statute comports with the Supremacy Clause. It complements rather than conflicts with the Federal Pact Act. As the Court noted, GRE is currently in compliance with both the challenge statute and the Pact Act, a fact that belies GRE's contention that compliance with both is impossible. The statute comports with its requirements of substantive due process. As the district court held, the state statute is supported by a rational government interest in granting state certification only to those non-participating manufacturers that are able to track their product from the point of manufacture or importation through the distribution chain and show that the vast majority of those cigarette shipments are being properly reported to state taxing authorities in accordance with state and federal law. Do you know if other states have similar statutory arrangements for non-participating manufacturers? Your Honor, at this point, three other states have enacted essentially an identical statute. Arkansas, Nebraska, and Nevada. And many states may be holding off on enacting similar legislation to see how this litigation turns out. I would like to use Commerce Clause Analysis as a way of explaining the regulatory framework in which the challenge statute functions. This court, based on guidance from the U.S. Supreme Court and Healey v. Beer Institute, has articulated three factors that must be considered in determining whether a state improperly exerts extraterritorial control over out-of-state commerce. These factors have been discussed and utilized repeatedly in Second Circuit decisions, notably National Electric Manufacturers Association v. Sorrell, Freedom Holdings v. Spitzer, Freedom Holdings v. Cuomo, GRE v. Pryor, and most recently, Vizio v. Clay, as well as others. The first of these three considerations is whether the challenge statute is inconsistent with the regulatory regimes of other states. In this case, there is no allegation of such inconsistency. The second consideration is, does the challenge statute force a business to seek state approval before undertaking an out-of-state transaction? Clearly not. This statute has no effect whatsoever on the free flow of trade in any other state. The most that can be said of it is that if an NPM wants to sell its products in Connecticut, it will have to provide Connecticut with the same information about its sales that the NPM is already legally required to report to other state taxing authorities. The third consideration is, would free trade be inhibited if numerous other states adopted a similar statute? The so-called regulatory gridlock. And the answer to that is also clearly no. The adoption of this statute by other states would have no adverse impact whatsoever on the free flow of commerce. NPMs would simply take all of their nationwide data and provide duplicate copies of that data to all of the states that have the same regulatory requirement. So I take it that the argument is, at least in the context of this case, that these requirements have in effect a chilling or potential real chilling effect on the importers with which Grand River Enterprises does business. And so that's the crux of the problem or a crux of the problem. Your Honor, I would like to give two responses to that. First of all, most cases that raise a Commerce Clause issue allege a chilling effect. But as the court already suggested, the mere fact that involves effort is not a consideration under the Commerce Clause. Secondly, I would like to address very specifically GRE's arguments regarding the chilling effect on its interactions with its importers. As you heard, GRE contends that its importers are independent third parties over whom it holds no sway. And we can look at state law to show the inadequacy of that contention. And I would like to mention the specific statutory wording of three Connecticut statutes, which are part of the same statutory scheme we're considering. And also, they are part of the state's qualifying statute under the Master Settlement Agreement. They are part of the model statute, which every state that participates in the Master Settlement Agreement has had to enact. So these are provisions that will be seen in virtually every other jurisdiction. The first is a bedrock of MSA qualifying legislation, which is the requirement of the payment of escrow by non-participating manufacturers. And I'm going to paraphrase Connecticut General Statute Section 4-28iA1, which says, any non-participating manufacturer selling cigarettes to consumers within this state, whether directly or through a distributor, dealer, or similar intermediary or intermediaries, shall annually place into a qualified escrow fund the following amounts per unit sold. So right there, we see that lumped together with the manufacturer is everyone else in the downstream distribution chain. Let's look at the definition of units sold, which is also a term of art under the Master Settlement Agreement. Under Connecticut General Statute 4-28h12, units sold means the number of individual cigarettes sold in the state by the applicable tobacco product manufacturer, whether directly or through a distributor, dealer, or similar intermediary or intermediaries during the year in question. So we have the same incorporation of downstream actors in that statute. The third statute I want to refer your honors to involves importer liability, which is critical in this case, and that is Congen Stat. Section 4-28j, subsection D, which says, for any non-participating manufacturer that is importer of such non-participating manufacturer cigarettes shall have joint and several liability with such manufacturer for the deposit of all escrow amounts due and the payment of all penalties imposed under subsection B of this section for the units sold in the state. So it's impossible for GRE to argue that its importers have no interest or there is concern about the compliance of the importers with these statutes. And as Judge Stansu rightfully noted, there has been no problem with importer compliance. And in the four years that this case has been pending, no importer or distributor has sought to intervene, nor has any such entity sought to file an amicus brief in support of GRE in this case. What is really going on here? I mean, it's obviously a taxation issue, but what in the AG's view is really going on here for the Commissioner of Revenue Services? Your Honor, I think that what's really going on here has to do with this court's decision in the Mountain Tobacco case, which involves whether tribal cigarette sales have to be reported under the Federal Pact Act. And in King Mountain, this court ruled that the Pact Act's definition of interstate commerce included tribal sales that pass between a tribal reservation in one state into a tribal reservation in a different state. And that's what you want us to deal with? Your Honor, I think this would be a perfect opportunity because... Why in the world? It does not seem to be centrally related to this case, but why is it a perfect opportunity? Well, it does raise the issue because the core of a central core of GRE's argument is that it cannot comply because three of its five importers are located on tribal reservations. Well, it's an open question whether sales between two tribal reservations within the same state are subject to Pact Act reporting. GRE claims absolutely they are not, and the Commissioner has excused GRE from reporting those because there were two district court decisions that said that they were not subject to Pact Act reporting. Now, King Mountain reversed one of those. So, the question is still open, but three of GRE's five importers are tribal importers. So, naturally, there is going to be a discrepancy if those sales are not included. But the Commissioner has carved those sales out. If we were to agree with the state on, you know, there are basically four issues, but issue and the substance of due process issue, just based on the arguments that we've already heard, why would we need to deal with the issue that you want us to deal with? Do we have to deal with it? You do not have to deal with this issue. No, because the Commissioner has used his discretion to say there is case law suggesting that these sales are not subject to the Pact Act and that reporting is not required by law and therefore we are not going to require such documentation. So, yes, it is not necessary for the court to reach that. However, Your Honor did ask what is really going on and the situation is that there are a lot of cigarettes from tribal sales that are currently unaccounted for. Because they're tribe to tribe. Correct, Your Honor. Correct, Your Honor. All right. Well, we've kept you past your time. Is there any rebuttal? Yes, Your Honor. I reserve two minutes if I may proceed. Thank you. First, the three statutory provisions that the state referred to in its argument contain some important words that I think are ignored with the reconciliation requirement. Each of the references to importers of non-participating manufacturers products refers to sales or other activity or the need to make escrow payments in this state. And Grand River takes no issue with the state's efforts to collect records to verify that all taxes and escrow payments for sales in Connecticut are made. But the requirement that's at issue here reaches outside of the state and... Well, isn't the reconciliation requirement an effort to verify? Isn't it part and parcel of trying to verify? How else are you going to verify? I mean, with these participating manufacturers, it's easy because of the PAC law and because of the agreement, the MSA. But if you are not a participating manufacturer, as is your client, and you're outside of the U.S., then how else is the state going to be able to verify the number of cigarettes that your client is selling in its state for purposes of collecting the tax on the sale of those cigarettes? Well, the state can ask for, and Grand River complied with its request to the extent it asked for records of Grand River and the importer that does... Yeah, it's a trust but verify statute. And that aspect, Grand River takes no issue with. It's the fact that under this requirement, importers who do no business in Connecticut, that only do business in Florida or Georgia or some other state, is asked to turn over its records for the state to try to reconcile those figures. Those figures, even if the state's theory that those figures might show some diversion of product into an illicit market, even if you were to give credence to that, it would say nothing about any sales in the state of Connecticut because those entities don't do any business in this... But that's just further verification. Look, we're talking about, even if we get past whether there's a property interest here, we're talking about rational basis review. And I am not hearing, but maybe I've missed it, anything that suggests to me that this is really irrational to ask all of the importers with which your client deals to be part of this reconciliation effort. So that if it's nothing, okay, great. Then that's very helpful for the state to know, it seems to me. And it's not just the issue with the Grand River's importers, which it does direct business with. In order to comply with this provision, you have to go all the way down the chain of distribution to entities that are doing business all over the country, but not in Connecticut. And I'll also return to the Commerce Clause concern. You're not able to argue that these records would not be kept otherwise, and therefore they have to create records. These are records that everybody has, correct? Well, they would have PACDAC reports, interstate shipping reports, as opposed to inventory, because inventory is a gap that the state acknowledges. In some instances, third parties may have to create inventory reports to show that cigarettes that were imported in one year were held in inventory and carried over to the next year. Oh, I see, yeah. And all of these records, and I want to make sure I finish with this point, all of these records are confidential. And when it comes to PACDAC reports, the PACDAC says it should be used only for purposes of ensuring compliance with the PACDAC. The state doesn't have any entitlement to confidential records of third parties that aren't doing business in the state of Connecticut. If an entity does business in Connecticut and submits to its jurisdiction, that may be a different story. But the entities that Connecticut is reaching out and grabbing with this regulation don't do business in Connecticut. Yeah, but you got the records in this case, and is there showing that anybody's resisting turning over these records, is there? Well, and as a reminder, we're just at the pleading stage. That, you know, those issues, the state contends it's easy to get these records. We have alleged it's not easy to get these records. There's a lot of... Just as a follow-up to that question, you haven't pledged, you haven't alleged that importers have resisted. And is that right? Well, we haven't pledged that, you know, any importer or third party has refused to the point that it resulted in us not being certified. The entities that have done business only in Indian country, you know, haven't turned over those records. As the state pointed out in its argument, you know, the state didn't insist on at least those records. But if it were to, under this requirement, then, you know, I do see a potential for risk moving forward. Well, thank you very much. We'll reserve a decision. The case is submitted.